# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3226-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

R.L.,

     Defendant,

and

B.G.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF K.G.
and J.G., minors.

_____

Submitted August 2, 2022 – Decided August 23, 2022

Before Judges Sumners and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FG-03-0022-21.

Joseph E. Krakora, Public Defender, attorney for appellant (Catherine Reid, Designated Counsel, on the briefs).

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Amy M. Young, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Jennifer M. Sullivan, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

After a four-day guardianship trial in this Title 30 case, Family Part Judge Richard L. Hertzberg terminated the parental rights of R.L. (the "mother") and B.G. ("Bill") to their twenty-one-month-old special needs twin sons, K.G. and J.G. (collectively referred to as "boys," "sons," or "twins").[1] Only Bill appeals the trial court's decision. The Law Guardian and the Division of Child Protection and Permanency (Division) urge that we uphold that decision. We affirm.

---

[1] We use initials and fictitious names to protect the identity of the parties. R. 1:38-3(d)(12).

I

The evidence is outlined in the judge's oral opinion.  A summary relevant to Bill's appeal will suffice here.

Following their premature birth, the boys tested positive for cocaine due to R.L.'s drug use during the pregnancy and remained hospitalized for approximately six weeks.[2]  The Division conducted an emergency removal when the boys were released from the hospital and placed them in a resource home. At a court hearing two days later, the emergency removal was upheld, and the Division immediately made referrals for substance abuse evaluations and treatment, psychological evaluations, random urine screenings, and a supervised visitation service.

The unrebutted evidence shows that Bill has had a long history of unemployment and drug addiction that he has been unable to control, despite the Division's assistance with treatment, leading to multiple periods of incarceration.  Bill's addiction and incarceration also limited his ability to consistently visit with his sons.

---

[2] Because the twins suffered no symptoms of withdrawal, the Division concluded that abuse and neglect was "not established."

The Division presented the testimony of Brian Eig, Psy.D., who was qualified as an expert in forensic and clinical psychology. Dr. Eig diagnosed Bill with "unspecified personality disorder with antisocial and narcissistic traits[,] as well as unspecified substance abuse disorder in early remission." He explained that Bill's antisocial and narcissistic pathologies negatively impacted all four factors of parenting: nurturance, protection, guidance, and stability. He opined that even if Bill committed to change, it would likely take him "at least a couple years of intense therapy" to correct these conditions; thus, Bill's prognosis for rehabilitation was poor. Dr. Eig concluded that Bill would not be a minimally adequate parent and recommended against reunification with his sons.

On the other hand, Dr. Eig concluded the boys had a strong, positive, and warm relationship with the resource parents, consistent with a secure attachment. He opined that the boys would be at high risk of suffering severe and enduring harm if separated from their resource parents.

Gina Cordelle, the family's Division case worker, also testified on behalf of the Division. She detailed the Division's plan for the boys was adoption by their resource parents, who were interested in adopting. She stated the resource parents told her they were willing to allow the boys to remain in contact with

4

Bill and his family. She further testified that the Division was unable to identify any of Bill's or R.L.'s family members who were willing to care for the boys.

The Law Guardian presented the expert testimony of Gregory C. Gambone Ph.D., who had conducted a psychological evaluation of Bill, and bonding evaluations between the boys and Bill, as well as the boys and the resource parents. Dr. Gambone opined that Bill's plans to reunite with his sons were merely aspirational. The doctor stated that Bill's cognitive functioning was sufficient to parent and that he could, in time, become an adequate parent, but that he was not yet capable of adequately parenting his sons on an independent basis and had minimal chance of rising to the level of parental adequacy at any point during their childhood. Dr. Gambone also expressed concern about the possibility of a drug relapse or reincarceration due to Bill's repeat recovery-court violations.

Bill's bonding evaluation with his sons conducted by Dr. Gambone did not go well. Bill was unable to control their behavior, so Dr. Gambone terminated the observation session early. In contrast, Dr. Gambone's observation of the boys with the resource parents led him to conclude that the resource parents "appear[ed] to serve the principal psychological functions of mother and father."

He opined that terminating the relationship with the resource parents would be "devastating" to the boys, and Bill would not be able to mitigate the harm.

Bill testified on his own behalf. He acknowledged that he was not ready to take custody of his sons immediately upon completing his drug treatment program, estimating he would need six to eight months after completing the program before being ready to raise his sons. Bill discussed his two employment options and his sister's efforts to find him a place to live. Bill testified he wanted to make the necessary changes to care for his sons, and if they were returned to him, he wanted them to maintain a relationship with their resource parents.

In his oral decision, Judge Hertzberg thoroughly detailed his factual findings and analyzed all four prongs of N.J.S.A. 30:4C-15.1(a), concluding that it was in the boys' best interests for Bill's rights to be terminated. The judge found Bill's testimony lacking in credibility, concluding his plans for employment and housing were not concrete but mere "possibilities," and his plan that he would be ready to properly parent the boys within six to eight months after leaving his drug treatment program was tenuous. The judge therefore found Bill had no concrete plans and had not demonstrated the ability to parent. He cited to Bill's substance abuse, criminal activity, inability to remain consistent with services, and problematic personality traits as evidence of

6

continued risk. Noting that substance abuse alone is not a basis for termination of parental rights, the court found that Bill's history reflects his inability to comply with services.

Judge Hertzberg was satisfied the Division had provided Bill "numerous services," such as visitation, psychological evaluations, urine screens, referrals to substance abuse treatment, and transportation. The judge also found the Division made efforts to seek alternatives to termination of parental rights through family members, but there were no viable options.

Finding Drs. Eig and Gambone and caseworker Cordelle credible, Judge Hertzberg determined the boys would suffer harm if the resource parents' relationship was severed, that Bill would be unable to mitigate that harm, and that the resource parents were willing to allow Bill to remain in his sons' lives. He concluded the twins "deserve[d] permanency" with the foster parents, whom they consider to be their mother and father, and there was no prospect that Bill would reach the point of being able to serve as a competent parent in a reasonable time. The judge noted that termination of Bill's parental rights was not based solely on his incarceration, but rather the personality traits that led to his incarceration were the same traits that rendered him incapable of parenting.

A-3226-20

II

In this appeal, Bill contends the trial judge erred in finding the Division met its burden to prove: he harmed the children; he was unable or unwilling to parent his sons and it was not reasonably foreseeable that he would be able to parent his sons in the future; services were provided to help him reunify with his sons; it considered alternatives to termination of parental rights, specifically the option of kinship legal guardian; and that termination of his parental rights would not do more harm than good because the record did not show that termination of his parental rights would result in a permanent home for the boys and the bonding evidence was impacted by external circumstances.

Our scope of review in Title 30 guardianship cases is limited. The trial court's findings in such cases generally should be upheld so long as they are supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014). The court's decision should be reversed or altered on appeal only if its findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Fam. Servs. v. P.P., 180 N.J. 494, 511 (2004) (quoting In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). We must give substantial deference to the trial judge's opportunity to have observed the witnesses first-hand and to evaluate

their credibility. R.G., 217 N.J. at 552. We must also recognize the expertise of the Family Part in matters involving the alleged abuse or neglect of children. See, e.g., N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012); N.J. Div. of Youth & Fam. Servs. v. L.J.D., 428 N.J. Super. 451, 476 (App. Div. 2012).

Applying these principles to the evidence in this case, we reject Bill's arguments to set aside the final judgment of guardianship. All four prongs of the statutory criteria are abundantly supported by the record, and the trial judge's decision comports in all respects with the law.

We therefore affirm the termination of appellant's parental rights substantially for the sound reasons detailed in Judge Hertzberg's oral opinion. No further discussion of the judge's wise analysis is necessary. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3226-20